Colin M. Stephens
STEPHENS BROOKE, P.C.
315 W. Pine
Missoula, MT 59802
Phone: (406) 721-0300
colin@stephensbrooke.com

Roy Falik
KIN & SPALDING LLP
1401 Lawrence St.
Suite 1900
Denver, CO 80202
Phone: (858) 344-7745
rfalik@kslaw.com

David Harper Weiss
MAYER BROWN LLP
700 Louisianna St.
Suite 3400
Houston, TX 77002-2798
dweiss@mayerbrown.com
          *Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| United States of America, | Case No.: 98-cr-00021-M-DWM-2 |
| Plaintiff, | |
| -vs- | **BRIEF IN SUPPORT OF OPPOSED MOTION FOR REDUCTION OF SENTENCE UNDER** *18 U.S.C. § 3582(c)* |
| Stacy Weischedel, | |
| Defendant. | |

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................1

II.  BACKGROUND .................................................................................2

    A.    As a child, Stacy Weischedel suffers sexual abuse and loss. ....................................................................................2

    B.    Marriage to Eric Weischedel....................................................3

    C.    Stacy endures FCI Dublin—The Rape Club...........................4

    D.    Richard Larson, a prison official, sexually abuses Stacy. .....................................................................................6

    E.    The BOP closes FCI Dublin and transports Stacy to "Misery Mountain." ................................................................8

III. ARGUMENT .....................................................................................10

    A.    Stacy has exhausted her administrative remedies. .............11

    B.    Stacy presents extraordinary and compelling reasons consistent with the Guidelines. ...........................................11

        i.    A BOP staffer groomed and sexually abused Stacy at FCI Dublin. .................................................13

        ii.    Stacy served time at FCI Dublin. US Judge Gonzalez Rogers has found that serving time in the "Rape Club" should constitute extraordinary and compelling circumstances. ....................................14

        iii.    The BOP abused Stacy during the transfer process to SFF Hazelton, another extraordinary and compelling ground for reduction in sentence. .......16

    C.    Because Stacy presents extraordinary and compelling reasons for release, the Court should consider a downward departure that would reduce her sentence to time served followed by a period of supervised release........18

i.    Non-retroactive changes in sentencing law are relevant to the "totality of the circumstances" analysis and do not constitute an attempt to relitigate the original sentence ..................................... 18

ii.    If Stacy were sentenced today, a new downward departure would apply, putting her sentencing range below a life sentence. ......................................... 20

D.    Stacy has satisfied the Section 3553(a) Factors Considered in Sentencing. ................................................ 22

i.    Reducing Stacy's sentence from life to 30 years plus supervised release would still reflect the seriousness of her crime, promote respect for the law, provide a just punishment, and deter crime ........ 23

ii.    Stacy has undergone remarkable rehabilitation......... 24

iii.    Stacy is not a threat to society .................................... 28

iv.    Stacy has a comprehensive release plan. .................... 30

IV. CONCLUSION ........................................................................... 31

# TABLE OF AUTHORITIES

<div align="right">

**Page(s)**

</div>

### Cases

*California Coalition for Women Prisoners, et al. v. United States, etal.*,
No. 4:23-cv-04155-YGR (N.D. Cal. August 16, 2023)............. 4, 5, 7, 12

*Concepcion v. United States*,
597 U.S. 481 (2022)...................................................................24

*Davis v. Gomez*,
No. 20-CV-4683, 2023 WL 2572471 (N.D. Ill. Mar. 20,
2023)...................................................................................14

*Dean v. United States*,
137 S. Ct. 1170 (2017)............................................................20

*Gall v. United States*,
552 U.S. 38 (2007)..................................................................18

*Pepper v. United States*,
562 U.S. 476 (2011)................................................................20

*United States v. Castellanos*,
No. 4:22-CR-00017-BMM-1, 2024 WL 4504523
(D. Mont. Oct. 16, 2024).........................................................13

*United States v. Chen*,
48 F.4th 1092 (9th Cir. 2022) ..................................................15

*United States v. Douglas*,
No. CR 10-171-4 (JDB), 2021 WL 214563 (D.D.C. Jan. 21,
2021)...................................................................................24

*United States v. Greene*,
516 F. Supp. 3d 1 (D.D.C. 2021) ..............................................24

*United States v. Parker,*
461 F. Supp. 3d 966 (C.D. Cal. 2020) ..............................................22

*United States v. Patricia LeBaron,*
No. CR H-92-177-05, 2023 WL 7308116 (S.D. Tex. Nov. 6,
2023) ................................................................................................16

*United States v. Rodriguez,*
424 F. Supp. 3d 674 (N.D. Cal. 2019) ................................................9

*United States v. Roper,*
72 F.4th 1097 (9th Cir. 2023) ..................................................... 15, 16

*United States v. Russell,*
No. 1:21-CR-00158-DCN-2, 2024 WL 4851154 (D. Idaho
Nov. 21, 2024) ............................................................................ 10, 13

*United States v. Santana,*
No. 22 CR. 368 (VM), 2024 WL 2275037 (S.D.N.Y. May
20, 2024).........................................................................................12

*United States v. Tidwell,*
476 F. Supp. 3d 66 (E.D. Pa. 2021)..................................................24

*United States v. Vaughn,*
62 F.4th 1071 (7th Cir. 2023) ..................................................... 15, 16

*United States v. Wright,*
46 F.4th 938 (9th Cir. 2022) .............................................................9

## Statutes

18 U.S.C. § 3553(a).............................................................. 9, 18, 19, 20

18 U.S.C. § 3553(a)(2)..........................................................................18

18 U.S.C. § 3553(a)(2)(C)-(D) ..............................................................20

18 U.S.C. § 3582(c)(1)(A)(i)..................................................................16

19 U.S.C. § 3582(c)(1)(A) ....................................................... 1, 15, 18, 26

28 U.S.C. § 991(b)(1)(C).........................................................................17

## Other References

United States Sentencing Guidelines § 1B1.13(b) ........................ *passim*

USSC, *The Effects of Aging on Recidivism Among Federal Offenders* (2017), https://tinyurl.com/2zvcaptk............................ 23, 24

# I.    INTRODUCTION

Stacy Weischedel respectfully moves this Court to grant her motion for compassionate release under *18 U.S.C. § 3582(c)(1)(A)*.

Stacy presents an extraordinary and compelling case for compassionate release due to the abuse she experienced at the hands of federal prison officers. Stacy is now 51 years old and has served more than 25 years of a life sentence, primarily at FCI Dublin, a facility that was so plagued by rampant sexual abuse that it had to be closed. United States District Court Judge Gonzalez Rogers toured FCI Dublin and was shocked by what she discovered: prison officials who engaged in numerous acts of sexual assault against prisoners and retaliated against those who spoke up. Stacy was one of those victims, and, for a long while, she did not speak up because she witnessed what happened to those who did—they lost their jobs and were placed in a solitary confinement or transferred away.

Despite the conditions and abuse, Stacy managed to maintain a productive living and undergo remarkable post-offense rehabilitation. Her prison record is impeccable, her rehabilitation is extensive, and she has consistently shown great remorse for her crime.

Stacy's case presents extraordinary and compelling reasons warranting a reduction in her sentence according to United States Sentencing Guidelines ("Guidelines") Section 1B1.13(b). The Guidelines specifically recognize the abuse Stacy suffered and the conditions she had to survive as reasons for this Court to grant a reduction in sentence. Moreover, Stacy has fulfilled the purpose of her sentencing and has a comprehensive release plan that will allow her to smoothly return to life outside of prison. Stacy respectfully requests that the Court reduce her sentence to time-served and release her under conditions this Court deems appropriate for however long this Court deems appropriate.

## II. BACKGROUND

### A. As a child, Stacy Weischedel suffers sexual abuse and loss.

Stacy's father was a drug addict, and her mother fled from him. Ex. 1, Weischedel Sentencing Hearing Transcript, 98:5-24. Before she was 10, her grandfather molested her—many times—over several years. *Id.* at 100:5-101:1. When she was 13, three boys (ostensibly her friends) gang raped her. *Id.* at 102:2-5. The rest of her "friends" ostracized her, and she changed schools. *Id.* at 102:7-15.

Stacy had a stepfather. Unlike other men in her life, he adored

her, and he legally adopted her. *Id.* 104:1-11. When she was 17, he died in a logging accident. *Id.* All this occurred before she graduated from high school.

When she graduated from high school, Stacy married her boyfriend and became pregnant. Ex. 1, at 104:19-21. Her baby died during labor and was delivered stillborn. *Id.* at 104:22-106:1. A year later, Stacy gave birth to her son, Cole. *Id.* at 106:2-18. Then, her marriage fell apart, leaving her a single mother with a high school diploma and an infant.

### B. Marriage to Eric Weischedel

Shortly after her divorce, Stacy was depressed and became infatuated with Eric Weischedel despite him being a criminal and drug addict. They married soon thereafter. On their wedding night, he introduced her to methamphetamine. Then he embezzled money from her employer, in her name, and convinced her to flee. Ex. 2, Weischedel Decl., ¶ 9. Stacy left Cole behind with her mother and fled the state with Eric. *Id.* at ¶ 10. Stacy began using meth regularly, and Eric became verbally and physically abusive. *Id.* Soon they ran out of money.

They hatched a plan to steal a car from a dealership. *Id.* at ¶ 11. On April 18, 1998, during a test drive, Eric Weischedel shot Peter Stuckey, a car salesman, and killed him. On November 5, 1998, Stacy, a first-time offender, after having confessed and cooperated, pled guilty to six counts related to Peter Stuckey's murder. Her then mandatory Guideline range was life. In the pre-*Booker* world, the Court sentenced Stacy to life in prison without the possibility of release.

C.     **Stacy endures FCI Dublin—The Rape Club.**

Stacy spent the first 25 years of her sentence at FCI Dublin, a prison "so notorious for the endemic sexual abuse of female inmates by prison staff that it [was] known as 'Rape Club.'" *See* Ex. 3, Larry Altman, Congress Passes Prison Oversight Bill Prompted by Misconduct at FCI Dublin, The Independent (July 18, 2024). Since 2021, the United States has charged a Warden, an Associate Warden, a Chaplain, and five other FCI Dublin employees for sexually abusing incarcerated women. *See* Ex. 4, Michael. R. Sisak, et al., Bureau of Prisons to close California women's prison where inmates have been subjected to sex abuse, U.S. News (April 14, 2024). Although five have pled guilty and two were convicted, the abuse continued.

In August 2023, a coalition of advocacy groups filed suit against the BOP. *See* Ex. 5, Complaint, *California Coalition for Women Prisoners, et al. v. United States, et al.*, No. 4:23-cv-04155-YGR, Dkt. 1 (N.D. Cal. August 16, 2023) (hereinafter "CCWP"). In response to a motion for independent oversight, Judge Gonzalez Rogers made an unannounced visit to the prison. She spent nine hours speaking to correctional staff, medical staff, counselors, and over 100 prisoners.

In March 2024, Judge Gonzalez Rogers granted class certification and found that:

- FCI Dublin has "history of sexual abuse."
- The warden had "created and perpetuated a culture of abuse."
- Women who spoke out were punished, often being placed in small, solitary cells.
- The BOP had "proceeded sluggishly with intentional disregard of the inmates' constitutional rights despite being fully apprised of the situation for years."
- "[FCI] Dublin is a dysfunctional mess. The situation can no longer be tolerated. The facility is in dire need of immediate change […] The repeated installation of BOP leadership who fail to grasp and address the situation strains credulity."
- The "BOP has lost the ability to manage with integrity and trust."

Ex. 6, *CCWP,* Dkt. 222. After this ruling, Judge Gonzalez Rogers penned a letter to her colleagues asking them to favorably consider compassionate release requests for the women at FCI Dublin because

5

they had done "harder time" than other institutions. Ex. 7, *CCWP*, Attachment C, Dkt 301-3.

### D.   Richard Larson, a prison official, sexually abuses Stacy.

For almost 25 years at FCI Dublin, Stacy worked at UNICOR. She found purpose in working. And she found pride in not having to rely on her family for money. Ex. 2, Weischedel Dec., ¶ 13.

In 2015, Mr. Richard Larson became the IT specialist at UNICOR at FCI Dublin and often acted as a substitute factory manager. In 2019, while at work, Larson showed Stacy computer images of mountains and beaches. She enjoyed that because she had been in prison for over two decades. Ex. 2, Weischedel Dec., ¶ 16. One day, Larson showed Stacy and two other prisoners a photo of a nude woman in a yoga pose. *Id.* at ¶ 17. One of the other prisoners reported this incident only to be told that Larson was "socially awkward" and that they should ignore his actions. *Id.* at ¶ 17. Following this, Larson continued to show Stacy pornographic photos. He also began to bring her contraband in the form of candies and home-cooked food. *Id.* at ¶ 18.

After several months of grooming, Larson began brushing his body against Stacy. *Id.* at ¶ 19. Then he began pinching her butt cheeks. *Id.*

One day, he told her to put a tool in his front-left-side pants pocket. Then, he gave her a pair of silk panties and told her to put them on. She went to the bathroom and put them on. At the end of the day, Larson told Stacy to give the panties back, which she did. *Id.* at ¶ 20. Larson repeated this practice for several weeks.

One day, when Stacy returned a pair she had been wearing all day, he told Stacy that his wife had worn the same pair the day before. Ex. 2, Weischedel Dec., ¶ 22. The next day, Larson told Stacy that he was wearing that same pair, too, and he dropped his pants to show her. *Id.* A week after that, Larson brought in another pair of panties and told Stacy to put them on. As usual, she did so in the bathroom. As she did, she noticed that they were wet and sticky. When Stacy returned to work, Larson told her—with a smile—that he had ejaculated into them. *Id.* at 23.

Stacy felt disgusted and humiliated. She did not report that event or anything before it. As a long-time prisoner in the Rape Club, she knew what happens to "snitches."

Finally, one day in his UNICOR office, Larson ordered Stacy to stimulate his erection. Ex. 2, Weischedel Dec., ¶ 24. She complied. Three

weeks later, Stacy quit her job at UNICOR. Stacy loved that job and needed it. But quitting was the only way she could get away from Larson. *Id.* at 25.

### E. The BOP closes FCI Dublin and transports Stacy to "Misery Mountain."

On April 5, 2024, Judge Gonzalez Rogers appointed a Special Master to oversee FCI Dublin. Ten days later, the BOP announced that it would close FCI Dublin completely. Judge Gonzalez Rogers then ordered the BOP to update casework, classifications, and medical records—with review by a special master—before it transferred any women. Ex. 8, *CCWP*, Dkt. 252. Instead, the BOP ordered the FCI Dublin staff to stay home while officers from other facilities expedited transfers. During this process, prison officers threw away Stacy's personal property, withheld necessary medication for the trip, and skipped medical exams. Ex. 2, Weischedel Dec., ¶ 30; Ex. 9, Berkowitz Dec., ¶ 23.

At this point, Stacy had been at FCI Dublin for 25 years. Despite the harsh conditions, Stacy had a community; she had friends; she had served as a mentor to dozens of inmates over many years (most of whom entered after her and then left while she remained); she had a faith

group; she had a job. She lost all of that so that the BOP could avoid judicial oversight of its Rape Club.

During several days of travel, prison officials denied Stacy (and others) food, bathroom breaks, medication, and feminine hygiene products. Ex. 2, Weischedel Dec., ¶ 30. Newspaper reports support Stacy's declaration on this point. *See*, Ex. 10, Sydney Johson, Women at Troubled East Bay Prison Forced to Relocate Across the Country, KQED News, (April 27, 2024). Officers also turned up the bus's air conditioning so that it was freezing, and they played loud explicit music—at full volume—for hours on end. Weischedel Dec., ¶ 30.

As if that wasn't enough, Stacy was also subjected to a mock execution. On the drive to SFF Hazelton, after Stacy and the others had been in restraints for more than 15 hours, they were stopped so the officers could conduct a restraint check. One of the officers threatened that "we should shoot them all" and then others echoed that "Hazelton doesn't need Dublin's problems, let's kill them now." Ex. 2, Weischedel Dec., ¶ 32. Officers then retrieved their shotguns, cocked them, and pointed them at Stacy and others. *Id*. With the gun sights trained on her, several seconds passed. Stacy thought she was about to

die and has remained deeply traumatized since then. *Id.*; Ex. 9, Berkowitz Dec., ¶ 31.

When she arrived at SFF Hazelton, officers "welcomed" her to "Misery Mountain" (SFF Hazelton's informal nickname). Ex. 2, Weischedel Dec., ¶ 29. At Misery Mountain, prison officials refused to give Stacy a job and imposed restitution payments that would have wiped out the meager savings from her work at UNICOR at FCI Dublin in two months (counsel intervened with the prison officials to prevent this). Here, Stacy was diagnosed with high blood pressure, likely due to the stress of the transfer, and placed on medication. Ex. 9, Berkowitz Dec., ¶ 32.

Stacy was later transferred to FCI Danbury, where she is today.

### III. ARGUMENT

Section 3582(c) permits compassionate release when three conditions are met: 1) the defendant has exhausted administrative remedies; 2) "extraordinary and compelling reasons" exist that accord with the Guidelines; and 3) relevant Section 3553(a) factors also support a reduction. *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019). In this case, the relevant Section 3553(a) factors are: *i)* the

reduced sentence reflects a just sentence and deters crime; *ii)* the inmate has been rehabilitated, and *iii)* the inmate is not a threat to society.

Here, all three conditions are met, and Stacy has a comprehensive release plan. Further, under Guidelines §1B1.13(c), if extraordinary and compelling reasons exist, the Court may consider non-retroactive changes in sentencing law when determining the extent of the reduction. In this case, if Stacy were sentenced today, a new downward departure would apply and place her sentence at 30 years instead of life, as well as supervised release. Stacy has already served 30 years (including credit for good time).

### A. Stacy has exhausted her administrative remedies.

On October 22, 2024, Stacy submitted a request for compassionate release to the Warden of FCI Danbury based on the same justifications set forth in this motion. He denied it on December 2, 2024. Ex. 11, Denial from FCI Danbury. She has exhausted her administrative remedies. *United States v. Wright*, 46 F.4th 938, 945, n.3 (9th Cir. 2022).

### B. Stacy presents extraordinary and compelling reasons consistent with the Guidelines.

The Guidelines delineate certain circumstances that constitute "extraordinary and compelling reasons" for a reduction in term of

imprisonment. Guidelines, §1B1.13(b). One extraordinary and compelling reason is if the defendant is a victim of abuse involving a sexual act at the hands of the Bureau of Prisons. Guidelines, §1B1.13(b)(4). The Guidelines further note any "combination of circumstances that … are similar in gravity to those described in paragraphs (1) through (4)" may also constitute an extraordinary and compelling reason. Guidelines, §1B1.13(b)(5).

To meet the explicit language of (b)(4), the sexual abuse contemplated must include a "sexual act," which is defined in 18 U.S.C. § 2246(2) as generally involving penetration or direct contact with genitalia. Further, (b)(4) requires a finding or conviction that a Bureau of Prisons officer was involved. Stacy's experiences track closely with the intent of (b)(4) and some courts have granted similar requests despite not complying with the black-letter of (b)(4). *See United States v. Russell*, No. 1:21-CR-00158-DCN-2, 2024 WL 4851154, at *5 (D. Idaho Nov. 21, 2024) (stating that a "lack of administrative review cannot be held against" a movant, especially "in light of FCI Dublin's closure."). But to avoid dispute around needing to strictly conform to the requirements of (b)(4), this motion is framed in the context of (b)(5),

12

which considers extraordinary and compelling reasons similar in gravity to those described in (b)(4).

Here, a combination of circumstances similar in gravity to the enumerated reasons under the Guidelines constitute extraordinary and compelling reasons and support Stacy's release. First, a BOP staffer groomed and sexually abused Stacy in a perverted manner. That conduct is of similar gravity to "sexual abuse" under §1B1.13(b)(4). Second, Stacy served time at the FCI Dublin Rape Club. Third, the BOP retaliated against Stacy in a brutal and inhumane manner during her transfer to SFF Hazelton.

> ### i. *A BOP staffer groomed and sexually abused Stacy at FCI Dublin.*

As addressed in detail above, beginning in 2019, Larson methodically groomed Stacy over several months. The grooming included showing her pornographic photos she did not want to see, unwanted touching, forcing her to participate in perverted and humiliating acts including wearing underwear soaked with his semen and ordering her to manually stimulate his erection. In short, an employee of the Bureau of Prisons coercively used Stacy for his own perverted sexual

entertainment. He took joy in humiliating her and making her feel disgusted. This to a woman who'd already been a victim of sexual abuse as both a child and a teenager. That conduct is similar in gravity to penetration. *See* Ex. 9, Berkowitz Dec., ¶ 52 (explaining that Stacy's assault led to the same impact as rape would have). And Larson's conduct makes Stacy a victim of "Sexual Abuse" as codified in 18 U.S.C. § 2242.

On June 19, 2024, while serving time at SFF Hazelton, Stacy reported Larson's abuse to the Office of the Inspector General. On November 15, 2024, Ms. Alethea Sargent, Assistant United States Attorney for the Northern District of California, and Mr. Robert Kaczowka, Special Agent with the Office of Inspector General, interviewed Stacy as part of their investigation into crimes at FCI Dublin. They have since spoken with opposing counsel directly, presumably to relay their findings.

<div style="margin-left:2em">

ii. *Stacy served time at FCI Dublin. US Judge Gonzalez Rogers has found that serving time in the "Rape Club" should constitute extraordinary and compelling circumstances.*

</div>

When considering a combination of circumstances, courts have held conditions of confinement are relevant under §1B1.13(b)(5). *United*

*States v. Santana*, No. 22 CR. 368 (VM), 2024 WL 2275037, at *2 (S.D.N.Y. May 20, 2024) ("Given the severe prison conditions that prevail … this Court and others have adjusted sentences of defendants in custody there for lengthy periods").

Until April 2024, Stacy served her time at FCI Dublin, which became notorious as the "Rape Club." As detailed above, Judge Gonzalez Rogers concluded the BOP had "proceeded sluggishly with intentional disregard of the inmates' constitutional rights despite being fully apprised of the situation for years." *See* Ex. 6, *CCWP,* Dkt. 222 at 1, 14. Her Honor also found that the women at FCI Dublin "had limited to no access to constitutionally adequate medical and mental health care, programming, and timely administrative relief." Ex. 7, *CCWP*, Dkt 301-3. Emphasizing that "[FCI] Dublin is a dysfunctional mess," Judge Gonzalez Rogers asked her colleagues to consider compassionate release requests favorably because the women at Dublin had done "harder time" beyond anything a sentencing judge could foresee or intend. *Id.*

Other courts have accorded weight to Judge Gonzalez Rogers's views. For example, in *Russell,* the U.S. District Court for the District of Idaho accepted the movant's abuse claim under (b)(4)—despite a lack of

formal administrative finding—based on Judge Gonzalez Roger's description of Dublin as a "dysfunctional mess." *Russell*, 2024 WL 4851154, at *5.

This District has also acknowledged that serving time at FCI Dublin constitutes hard time: "FCI Dublin inflicted serious harm on inmates, which resulted in the historic closure of the facility." *United States v. Castellanos*, No. 4:22-CR-00017-BMM-1, 2024 WL 4504523, at *3 (D. Mont. Oct. 16, 2024) (Morris, C.J.).

> iii. *The BOP abused Stacy during the transfer process to SFF Hazelton, another extraordinary and compelling ground for reduction in sentence.*

On April 15, 2024, the BOP suddenly shut down FCI Dublin, scattering women across the country. During the transfer process, BOP officials denied Stacy bathroom breaks, access to hygiene products, and food. They also intentionally sleep deprived her, subjected her to a freezing bus, a mind-numbing children's song at high volume for hours on end, and a mock execution.

Depriving one the use of a bathroom creates a risk of "particular discomfort and humiliation" and may rise to the level of cruel and unusual punishment. *Davis v. Gomez*, No. 20-CV-4683, 2023 WL

2572471, at \*3 (N.D. Ill. Mar. 20, 2023). If depriving a person of a bathroom can constitute "cruel and unusual punishment" under the U.S. Constitution, then what the BOP did to Stacy during the transfer process can easily be considered extraordinary and compelling.

Even worse, the BOP officials subjected Stacy to all of that torture as retaliation, because she came from FCI Dublin. They told her expressly: "[you all] need to learn to keep your mouths shut [instead of complaining about sexual abuse]." *See* Ex. 12, Lisa Fernandez and Cristina Redon, Powerless in Prison: The shutdown of FCI Dublin, Fox KTVU (May 5, 2024). This statement only compounded the cruelty. At that point in time, Stacy had kept her mouth shut. She had not yet reported what Larson had done to her out of fear of retaliation. And yet, just because she came from the BOP's Rape Club in California, BOP officials in West Virginia tortured her. They tortured Stacy—who had kept her mouth shut—because other inmates had the temerity to speak up.

That abuse in combination with the circumstances of her confinement at FCI Dublin and the sexual abuse she suffered for Larson's gratification is of similar gravity to sexual assault involving a sexual act

by a BOP official as described in the Guidelines § 1B1.13(b)(4). It therefore constitutes extraordinary and compelling reasons under Guidelines §1B1.13(b)(5).

### C. Because Stacy presents extraordinary and compelling reasons for release, the Court should consider a downward departure that would reduce her sentence to time served followed by a period of supervised release.

#### i. *Non-retroactive changes in sentencing law are relevant to the "totality of the circumstances" analysis and do not constitute an attempt to relitigate the original sentence*

Under Guideline §1B1.13(c), if a defendant establishes extraordinary and compelling reasons exist to warrant a sentence reduction, then changes in the law—including non-retroactive amendments to the Guidelines—may be considered to determine the extent of the reduction. The Ninth Circuit has held that if the defendant notes applicable, intervening sentencing law, then the Court may consider it even if that law is non-retroactive. *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (concluding "that district courts may consider non-retroactive changes in sentencing law, in combination with other factors particular to the individual defendant, when analyzing extraordinary and compelling reasons for purposes of § 3582(c)(1)(A).");

18

s*ee also id.* at 1100 (stating "in conducting an analysis of [compassionate release] factors, a district court is mandated to consider the totality of the circumstances … [which] include subsequent developments in the law."). The Ninth Circuit has also held a court should consider whether those changes in the law "tip the balance" in the defendant's favor. *United States v. Roper*, 72 F.4th 1097, 1103 (9th Cir. 2023); *see also United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023) ("[A] combination of factors may move any given prisoner past [the threshold for relief], even if one factor alone does not."). And the Ninth Circuit has held a defendant's use of new sentencing law in a Motion for Reduction of Sentence does not constitute an attempt to relitigate the original sentence. *Roper*, 72 F.4th at 1102.

Under her current sentence, Stacy, who is 51 years old, will continue to serve until the end of her life. The court in *United States v. Patricia LeBaron* granted a motion for compassionate release based on similar circumstances. No. CR H-92-177-05, 2023 WL 7308116, at *8 (S.D. Tex. Nov. 6, 2023). The court "considered the defendant's efforts to rehabilitate herself over the thirty years she has been imprisoned, the defendant's relatively young age at the time of the offenses, and the

difficult circumstances of her upbringing." *Id.* Thus, the court concluded "that defendant has demonstrated extraordinary and compelling reasons to reduce her sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13(b)(5)." *Id.*

  ii. *If Stacy were sentenced today, a new downward departure would apply, putting her sentencing range below a life sentence.*

On November 1, 2024, the U.S. Sentencing Commission (the "Commission") amended the Guidelines to create a downward departure based on a defendant's youth (into the mid-20s) and childhood trauma:

> "A downward departure also may be warranted *due to the defendant's youthfulness at the time of the offense* or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20s and contribute to involvement in criminal justice systems, including *environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships*."

U.S. SENT'G COMM'N, GUIDELINES MANUAL §5H1.1 (Nov. 2024) (emphasis added). The Commission created this downward departure based on recent advances in scientific understanding of childhood trauma's effect since Stacy was sentenced: "[This Amendment] reflect[s] advancement in knowledge of human behavior as it relates to the criminal justice process, 28 U.S.C. § 991(b)(1)(C)." *See* Ex. 13, United

States Sentencing Commission, Amendment 829. Amendment: Section 5H1.1. In fact, in recent years, long after Stacy was sentenced, scientific research has revealed in more detail how trauma, especially childhood sexual trauma, affects the brain and subsequent behavior. Ex. 9, Berkowitz Dec., ¶ 53; *See also* Ex. 14, Noll, Jennie G., *Child sexual abuse as a unique risk factor for the development of psychopathology: The compounded convergence of mechanisms*, 439 ANNUAL R. CLINICAL PYSCH. 17.1, 441, 454 (2021) (Finding that "[child sexual abuse] is associated with a host of psychopathology outcomes" and is a "potent and unique risk factor in the development of [mood, anxiety, substance use disorders, and PTSD].") In short, the current Guidelines and scientific evidence show that Stacy's history of trauma made her more likely to commit the terrible crime she did.

At sentencing, Stacy's counsel entered evidence showing she had suffered severe trauma and sexual abuse as a child, including molestation and rape. Ex. 9, Berkowitz Dec., ¶ 54. She also suffered the loss of a child and the man she considers her father before she was 19. These terrible experiences constitute another reason why Stacy was very reluctant to report the sexual abuse she has suffered in prison and

explain her behavior at her plea hearing. Ex. 9, Berkowitz Dec., ¶¶ 26-29.

Stacy committed her crime when she was 25 years old, after enduring severe adverse childhood experiences, substance use, and at least two abusive familial relationships (her grandfather and her second husband). Thus, if she were sentenced today, she would be eligible for a downward departure that did not exist when she was sentenced 27 years ago. If Stacy's history of trauma had been treated as even a mild mitigating factor, and two less points had been applied, the Guidelines would have mandated a sentence less than life. And the Court's departure would be affirmed so long as it was reasonable. *See Gall v. United States*, 552 U.S. 38 (2007).

**D.    Stacy has satisfied the Section 3553(a) Factors Considered in Sentencing.**

Under 18 U.S.C. § 3582(c)(1)(A), courts are instructed to consider certain factors when modifying a sentence. Here, the relevant factors are: a) that the sentence reflect the seriousness of the offense, promote respect for the law, provide just punishment, and deter crime; b) whether the defendant has been rehabilitated; and c) whether the defendant is a

threat to society. 18 U.S.C. § 3553(a)(2). All of these factors support compassionate release.

> i. *Reducing Stacy's sentence from life to 30 years plus supervised release would still reflect the seriousness of her crime, promote respect for the law, provide a just punishment, and deter crime.*

A sentence less than life would be the proper sentence under today's Guidelines. It would thus reflect the seriousness of her crime, promote respect for the law, provide a just punishment.

Anybody faced with the potential of serving over two decades at FCI Dublin would undoubtedly be deterred. Indeed, Stacy has repeatedly counseled at-risk youth in an effort to push these youth away from a criminal life, and she plans to continue this service to the community if she were to be released. For example, Stacy worked with FCI Dublin's Choices Program to participate in group sessions with troubled youth to share her story, even acting as team leader in one of the sessions. Ex. 15 at 1, Letter from Sally Swarts, Superintendent of Industries, FCI Dublin. As part of that program, Stacy had to "be recommended by staff" and "not blame others for [her] current circumstances." *Id.* Her story to at-risk youth is no less compelling just because she serves a sentence shorter

than her entire life.

### ii. *Stacy has undergone remarkable rehabilitation.*

Under the Guidelines and Section 3553(a), the court may consider Stacy's post-sentencing rehabilitation while weighing a motion for compassionate release. 18 U.S.C. § 3553(a)(2)(C)-(D); U.S.S.G. § 1B1.13(d) ("Rehabilitation of the Defendant while incarcerated may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."). Evidence of rehabilitation is "clearly relevant to the selection of an appropriate sentence" under 18 U.S.C. § 3553(a) to ensure the punishment is appropriate for the individual defendant before the court. *Pepper v. United States*, 562 U.S. 476, 488, 491 (2011); *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017).

Since 1998, Stacy has undergone extensive psychological treatment and individual therapy. Ex. 16, Memorandum Regarding Treatment Summary, U.S. DOJ. Her 2014 treatment summary recognizes the substantial progress she has made: "[Stacy's] extensive engagement in psychological therapy reflects motivation to change and a healthy involvement in self-care [and her] follow up on treatment

24

recommendations has been outstanding and above and beyond what would be expected from most individuals." *Id.*

In addition to her serious engagement in therapy, Stacy has used her time in prison to better herself. She worked for UNICOR for over two decades, stopping only because of Larson. *See* Ex. 15 at 2, Letter from Darlene Ingham. As Ms. Darlene Ingham, who was a factory manager at UNICOR during Stacy's time at FCI Dublin, explains in an attached letter, Stacy "assisted with the opening of several new UNICOR factories" and "held various positions such as Data Processor, Press Machine Operator, Packing Team Member, Forklift Driver, Tape Edge Machine Operator, Phone Agent, and I.T. Clerk" as well as "Call Center Business Office Clerk and Procurement Clerk." *See* Ex. 15 at 2, Letter from Darlene Ingham. According to Ms. Khan, another UNICOR supervisor at FCI Dublin, Stacy "learn[s] new tasks quickly," "exhibited exemplary work ethic," and even "completed her CSR Apprenticeship [and] Lean Six Sigma training." Ex. 15 at 3, Letter from Karen Khan. Stacy's work experience while incarcerated demonstrates that she will become a valuable employee to any company that hires her after release.

In addition to her work, Stacy has completed over 130 educational,

professional, and rehabilitative courses offered by the Federal Bureau of Prisons. *See* Ex. 18, DOJ Weischedel Program Review (May 18, 2022). Stacy has taken Accounting, Microsoft Office Suite, Finance, barista lessons, food safety courses, and Heating, Ventilation, Air-Conditioning, and Refrigeration (HVACR) training. *Id.* She has received certifications in OSHA Workers Safety, attained a Customer Service Apprenticeship through the California Department of Labor by completing over 5,400 customer service hours, and has also received the EPA's Universal Certification 608 for servicing appliances in compliance with the Clean Air Act. Stacy has participated in multiple mock job fairs and interviews, as well as completed coursework aimed at workforce development. Stacy also began working towards her associate degree at Las Positas College as one of fourteen students selected from an applicant pool of 100 people—a program she no longer has access to after the closure of FCI Dublin.

Stacy has touched the lives of countless people: law students, youth at risk, other inmates, her friends, and her family. Ex. 15, Ms. Weischedel Support Letters. For example, Stacy worked with Stanford Law School to present to law students about her experiences in the criminal justice

system. Stanford Law Professor George Fisher described her as patient, thoughtful, and eloquent. Ex. 15 at 20, Letter from George Fisher.

Stacy has also cultivated a slew of talents and friends in and out of prison. She plays the clarinet and saxophone. Ex. 15 at 21, Letter from Chaplain Margaret Ashforth. She maintains a strong relationship with her mother, son, and sister. Ex. 15 at 16-17, Letter from Spring Witham. Her family support favors a sentence reduction. *United States v. Parker*, 461 F. Supp. 3d 966, 983 (C.D. Cal. 2020) ("Courts have determined that this factor may favor sentence reduction where an inmate has numerous family ties, including family members who will provide for him.") (citation omitted). Stacy has found a community in the Church. Ex. 15 at 15, Letter from Shannon Nichols. Stacy has countless friends she has made at FCI Dublin, SFF Hazelton, and FCI Danbury—some of whom view Stacy as the reason they are still alive today. Ex. 15 at 12-14, Letter from Courtney McCoy. Even Stacy's advocates outside of prison have come to view her as a dear friend. Ex. 15 at 5-8, Letter from Georgean Arsons.

Overall, Stacy has completed as thorough of a rehabilitation as can be imagined while incarcerated. She has turned her life around and

shown that she is a compassionate, thoughtful, and talented person. During her time in prison, she has accepted full responsibility for her actions, demonstrated remorse, and taken every step she can to make herself a person better suited to reintegrate as a productive member of society and her community.

### iii. Stacy is not a threat to society.

At least four facts demonstrate that Stacy is not a threat to society. First, she has not had a single serious disciplinary infraction during her entire 27 years in prison. Second, as detailed in the section above, she has undergone an extraordinary rehabilitation. Third, she is 51 years old. The Sentencing Commission recognizes that older offenders are less likely to be a threat to society: "[o]lder offenders were substantially less likely than younger offenders to recidivate following release." USSC, *The Effects of Aging on Recidivism Among Federal Offenders* 3 (2017), https://tinyurl.com/2zvcaptk (finding "[o]lder offenders were substantially less likely than younger offenders to recidivate"). Fourth, psychiatric analysis supports the conclusion. Ex. 9, Berkowitz Dec., ¶¶ 49-50 ("I am certain that she is not a risk to the community and may even help youth and young adults who are troubled and getting into trouble.").

The seriousness of her crime does not make Stacy a threat to society. Stacy acknowledges the severity of her crime, but she is not the same person today who committed it almost three decades ago. Her sentence must be tailored to the person she is today and cannot be tied solely to the gravity of the transgression. *See Concepcion v. United States*, 597 U.S. 481, 498 (2022) ("district courts deciding First Step Act motions regularly have considered evidence of post-sentencing rehabilitation and unrelated Guidelines amendments"); *United States v. Tidwell*, 476 F. Supp. 3d 66, 77 (E.D. Pa. 2021) (stating the evaluation of a defendant's "history and characteristics is not frozen in time").

Even defendants involved in crimes that cause death can be rehabilitated and cease to be a threat to society. *United States v. Douglas*, No. CR 10-171-4 (JDB), 2021 WL 214563, at *7 (D.D.C. Jan. 21, 2021) ("Defendants who provide compelling evidence of their rehabilitation have been granted compassionate release notwithstanding gruesome offenses committed decades past.") (citing cases). For example, in *Greene*, the Court granted compassionate release for a man who killed a federal marshal and stated: "[Congress never intended for] court[s] to deny…motion[s] for compassionate release simply and solely because the

29

defendant's offense of conviction [was] an egregious and dangerous crime." *United States v. Greene*, 516 F. Supp. 3d 1, 27 (D.D.C. 2021).

### iv. *Stacy has a comprehensive release plan.*

If granted release, Stacy would live with her mother, Spring Witham, in Tumwater, Washington. Ex. 15 at 22-23, Witham Dec., ¶¶ 1-2. Spring lives in a comfortable apartment in a quiet town. Ex.15 at 22-23, Witham Dec., ¶ 3. She does not drink, use drugs, or smoke. She has no debt, lives a fiscally responsible lifestyle, and has the means and desire to help Stacy adjust smoothly back to life out of prison. Ex. 15 at 22-23, Witham Dec., ¶¶ 4-5.

Stacy is in close contact with Spring. Ex. 15 at 22-23, Witham Dec., ¶ 6. Stacy also keeps in touch with her son, Cole. Stacy entered prison when Cole was four years old, but they have remained close his entire life. Cole lives 20 minutes away from Spring. Ex. 2, Weischedel Dec., ¶¶ 7, 10. Cole has a daughter and recently had twins, and Stacy is eager to spend time with her new grandchildren and support Cole and his family in every way she can. Ex. 2, Weischedel Dec., ¶ 41.

Stacy has identified jobs near Tumwater through the Work Source Employment Agency. *See* Ex. 17, Felon Friendly jobs in Tumwater , WA

_ Jobs2Careers. She will be able to use public transit, which stops next to Spring's apartment and has routes to all parts of the nearby city of Olympia.

Stacy also finds refuge in her faith, and plans to attend Calvary Church, located in nearby Olympia. Calvary Church has a program to help at-risk teens, and Stacy looks forward to volunteering there. Stacy also intends to join Celebrate Recovery in Capital Christian Center in Olympia.

This Court's terms of supervised release could address all of these post-release activities. In short, if released, Stacy will be a productive member of society.

## IV.  CONCLUSION

Sexual abuse by a BOP official is grounds for compassionate release. But it is particularly warranted here. Stacy was molested as child and raped as a teenager. Although the United States sentenced her to life in prison, it did not impose a sentence that included sexual abuse, humiliation, or torture. But that is what she received.

Despite her life sentence, Stacy has worked diligently for almost three decades to rehabilitate herself and prepare for the day (no matter

how remote the odds) that she might be allowed to return to society and make a positive contribution.

WHEREFORE, Stacy Weischedel respectfully asks this Court to grant her motion for compassionate release under 19 U.S.C. § 3582(c)(1)(A).

RESPECTFULLY SUBMITTED this 12th day of June, 2025.

/s/ Colin M. Stephens  
Colin M. Stephens  
STEPHENS, BROOKE, P.C.

/s/ Roy Falik  
Roy Falik  
KING & SPALDING LLP

/s/ David Harper Weiss  
MAYER BROWN LLP

*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with Local Rule 7.1(d)(2) (as amended). The brief's line spacing is double-spaced, and is proportionately spaced, with a 14-point font size and contains less than 6,500 words. (Total number of words: 6,226 excluding tables and certificates).

DATED this 12th day of June, 2025.

/s/ Colin M. Stephens
Colin M. Stephens
STEPHENS BROOKE, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2025, a copy of the foregoing document was served on the following persons electronically through CM-ECF:

Clerk, United States District Court

**Jennifer S. Clark**
DOJ-USAO
101 E. Front Street,
Suite 401
Missoula, MT 59802
406-329-4265
Email: jennifer.clark2@usdoj.gov

Counsel for the United States

I hereby certify that a copy will be hand-delivered to Stacy Weischedel at the Federal Correctional Institution in Danbury, Connecticut, by June 16, 2025.

By /s/ Colin Stephens

Colin Stephens
Stephens Brooke, P.C.

Attorney for Ms. Stacy Weischedel